**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

_____

LEXON INSURANCE COMPANY, INC.,

                Plaintiff,

   -against-

UNITED STATES OF AMERICA and           Civil Action No. 2:18-cv-4245
FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for First NBC     **JURY TRIAL DEMANDED**
Bank, New Orleans, LA,

                Defendants.
_____

## AMENDED COMPLAINT

Plaintiff Lexon Insurance Company, Inc. ("Lexon"), by its attorneys, Locke Lord LLP,

Harris Beach PLLC, and Carpenter Law, states for its Amended Complaint against the United States

of America (the "United States") and the Federal Deposit Insurance Corporation ("FDIC"), as

receiver for First NBC Bank, New Orleans, Louisiana ("First NBC" or the "Bank"), as follows:

## THE PARTIES

1.      Lexon Insurance Company, Inc. is a Texas corporation, with its principal place of

business in Mount Juliet, Tennessee.

2.      First NBC was a Louisiana state-chartered bank, whose principal place of business

was New Orleans, Louisiana.

3.      The United States is the proper party for suit in an action pursuant to the Federal Tort

Claims Act against the FDIC in its corporate capacity for negligence.

4.      The FDIC is an agency of the United States charged by law with, among other duties,

administering the Federal Deposit Insurance Act and the federal bank deposit insurance system.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction pursuant to 12 U.S.C. §§ 1819(a), 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. §§ 1331, 1346, & 2675.

6.     Venue in the Eastern District of Louisiana is proper pursuant to 12 U.S.C. § 1821(d)(6)(A) and 28 U.S.C. § 1402.

**FACTUAL BACKGROUND**

7.     Linder was an oil and gas exploration and production company operating Reserves Management, L.C. ("Reserves") and Destin Resources LLC ("Destin," together with Reserves and Linder, "Linder") through a contract operating agreement.

8.     Linder operated in the Outer Continental Shelf ("OCS") of the Gulf of Mexico and was the lessee of certain leases in the OCS.

9.     The federal government imposes regulatory requirements on oil and gas operators in the OCS.  To secure the lessee's (Linder's) performance of these obligations, the federal government requires that operators secure lease and/or area-wide bonds.

10.     Between March 21 and March 25, 2016, Lexon, as surety, executed eight performance bonds (the "Bonds") for a total penal sum of $11,163,300.00 on behalf of Linder, as principal.  The United States of America acting by and through the Department of the Interior's Bureau of Ocean Energy Management ("BOEM") was the obligee under the Bonds.  Copies of the Bonds are attached as **Exhibit A**.

11.     As a condition for executing the Bonds, Lexon required Linder to post collateral which would secure Lexon in the event of a claim under the Bonds.

12.     On application of Linder, to fulfill Lexon's collateral requirements, First NBC issued two SLOCs that secured Lexon's obligations under the Bonds: SLOC # 284 dated March 24, 2016 in

2

the amount of $5,197,500.00; and SLOC # 285 dated April 7, 2016 in the amount of $4,788,000.00.

Copies of SLOC #284 and SLOC #285 are attached as **Exhibit B**.

13.     The SLOCs are identical, except as to date, number, and amount.  Each provides that a draw may be made if, under a Bond:

> (a) claim(s) have been made or may be made thereunder or premiums have not been paid and that in [Lexon's] *sole judgment as Surety* the funds represented by [Lexon's] drafts are required for [Lexon's] protection and for the protection of [Lexon's] co-sureties and re-insurers if any; [or]

> (b) Our notice of election not to renew has been received and that [Lexon] ha[s] not been released from liability under the bond(s), undertaking(s), agreement(s) or instrument(s) aforesaid and the proceeds of [Lexon's] drafts will be held by [Lexon] as collateral against loss, cost or expense including satisfaction of any and all unpaid premiums thereunder. (emphasis added.)

14.     By their terms, the SLOCs expired on March 24, 2017, but automatically renewed for one-year unless First NBC gave Lexon 60 days advance written notice of nonrenewal.  Specifically, each SLOC states :

> This Letter of Credit shall be automatically extended for additional periods of one year from the present or each future expiration date unless we have notified you in writing, *not less than sixty (60) days before such date*, that we elect not to renew this Letter of Credit.  (emphasis added.)

15.     As a result, First NBC had to give notice of nonrenewal by January 23, 2017.

### THE FDIC IN ITS PRE-RECEIVER CORPORATE CAPACITY ALLOWED THE SLOCS TO RENEW IN VIOLATION OF THE CONSENT ORDER

16.     At the time the SLOCs were signed, the FDIC already had significant concerns about First NBC's viability.  Indeed, upon information and belief, on or about late 2015 or early 2016, the FDIC and the Louisiana Office of Financial Institutions ("OFI") began an examination of First NBC. During that examination, First NBC's declining financial health became readily apparent to the FDIC.

17.     On April 4, 2016, First NBC Bank Holding Company, the parent of First NBC ("First NBC Holding"), declared in its SEC Form 8-K that its consolidated and interim financial statements for 2011 through 2015 were erroneous, needed to be restated, and should no longer be relied upon. First NBC Holding also indicated that "related press releases and earnings releases, as well as management's report on the effectiveness of internal control over financial reporting as of December 31, 2013 and 2014, should no longer be relied upon."

18.     As a result of the FDIC's longstanding concerns, on November 10, 2016, the FDIC, OFI, and First NBC entered into a Consent Order.  A copy of that Consent Order is attached as **Exhibit C** (the "Consent Order").

19.     As specified in the Consent Order and by law, in order for the FDIC to enter into such an order, it was required to conclude that a bank was engaging or about to engage in an "unsafe or unsound practice in conducting the business of such depository institution, or is violating or has violated, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to violate, a law, rule, or regulation, or any condition imposed in writing by a Federal banking agency."  12 U.S.C. § 1818(b).

20.     By the Consent Order, the FDIC and OFI directed First NBC to "eliminate and/or correct all violations of law and regulation noted in the Report," "implement procedures to ensure future compliance with all applicable laws and regulations," and "address any contraventions of policy noted in the Report."  Upon information and belief, the decision not to close First NBC in 2016 resulted in First NBC operating unsafely and in violation of laws and regulations for nearly all of that year, ultimately resulting in its failure in 2017.

21.     ████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

22.    Pursuant to Paragraph 4(a) of the Consent Order, the FDIC strictly prohibited First NBC from:

> Extend[ing], *directly or indirectly*, any additional credit to or for the benefit of any borrower whose existing credit has been classified Loss by the FDIC or the State as a result of its examination of the Bank, either in whole or in part, and is uncollected, or to any borrower who is already obligated in any manner to the Bank on any extension of credit, including any portion thereof, that has been charged off the books of the Bank and remains uncollected. (emphasis added)

23.    Similarly, Paragraph 4(b) of the Consent Order prohibited extensions of credit for the benefit of any borrower whose existing credit had been classified as "Doubtful" or "Substandard," unless the Bank's Board could document "why failure to extend such credit would be detrimental to the best interests of the Bank."

24.    Upon information and belief, Linder's credit was classified within the meaning of "Loss", "Doubtful," and "Substandard" within the meaning of Paragraphs 4(a) and 4(b) of the

Consent Order.  As a result, the Consent Order prohibited First NBC from extending additional credit to Linder.

25.     By entering the Consent Order, the FDIC had a duty to mandate First NBC's observance and compliance with all of its terms and conditions, including a duty to prohibit First NBC from extending additional credit to Linder.

26.     The FDIC breached its duty by failing to mandate First NBC's observance and compliance with the Consent Order, including Paragraphs 4(a) and 4(b).  The FDIC negligently allowed First NBC to extend the term of the SLOCs without board approval by not providing Lexon with a notice of nonrenewal.  As a result of the FDIC's negligence, the SLOCs were extended through March 2018.

27.     This automatic renewal of the SLOCs was an extension of additional credit to or for the benefit of Linder.

28.     By allowing the FDIC to extend the SLOCs, the FDIC violated its own Consent Order's nondiscretionary mandate to cease providing additional credit to financially troubled borrowers.  This caused Lexon to lose its right to the collateral for the Bonds and its opportunity to mitigate any losses, costs, and expenses incurred under the Bonds, resulting in damages in the sum of $9,985,500.00.

29.     Had First NBC sent a notice of nonrenewal to Lexon, the SLOCs allowed Lexon to immediately draw upon them and hold the proceeds as collateral against any loss, cost, or expense incurred under the Bonds.  But for the FDIC's negligence, Lexon would have been in position to use the collateral to resolve any claim under the Bonds while also taking the necessary steps to mitigate any losses.  In the event the resolution of any claim under the Bonds was less than the amount of the collateral ($9,985,500.00), the balance would have been returned to the Bank.

6

30.     The FDIC's negligence in failing to enforce the terms of the Consent Order caused

Lexon to suffer damages in the sum of $9,985,500.00.

**THE FDIC, AS RECEIVER, FAILED TO**
**REPUDIATE THE SLOCS WITHIN A REASONABLE TIME**

31.     Despite the Consent Order and its control over the Bank, the FDIC failed to resolve the

Bank's longstanding insolvency and mismanagement issues.

32.     On April 28, 2017, the OFI closed First NBC and appointed the FDIC as its receiver.

33.     ███████████████████████████████████████████████

█████████████████████

34.     ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████.

35.     ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

                    ███████████████████████████████████████

                    ██████████

                    ███████████████████████████████████

                    ███████████████████████████████████████████

                    ███████████████████████████████

████████████████████

36. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████

37. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████

38. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████
                    ██████████████████████████████████
                    ██████████████████████████████████
                    ██████
                    ██████████████████████████████████████
                    ████████████████████████████████
                    ██████
                    ████████████████████████████████████████
                    ████████████████████████████████████████
                    █
                    ██████████████████████████████████
                    ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

39. ██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

40. ██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

41. ██████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

42. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

43. ██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

44. ██████████████████████████████████████████

███████████



45.

46.

47.

48.

49.

50.

51.   ███████████████████████████████████████████████████

███████████████████████████

52.   That same day, September 28, 2017, the FDIC mailed Lexon formal repudiation notices, copies of which are attached as **Exhibit M**.

53.   On December 1, 2017, Lexon presented the SLOCs to the FDIC for payment.  A copy of Lexon's December 1, 2017 letter is attached as **Exhibit N**.

54.   The FDIC never responded to Lexon's presentment.

*Lexon Files its Administrative Claims*

55.   On December 21, 2017, Lexon filed proofs of claims with the FDIC for the SLOCs in the amounts of $5,197,500 and $4,788,000 ("Proofs of Claim").

56.   On February 26, 2018, the FDIC sent Lexon identical Notices of Disallowance of Claim, a copy of which is attached as **Exhibit O.**

57.   On March 29, 2018, Lexon filed an administrative claim under the Federal Tort Claims Act.

58.   Six months later, on September 21, 2018, the FDIC denied Plaintiff's FTCA claim with no explanation.  A copy of that decision is attached as **Exhibit P.**

59.   Pursuant to 12 U.S.C. 1821(d)(6)(A), this Court has *de novo* jurisdiction to review Lexon's claims.


### FIRST CAUSE OF ACTION

### (Federal Tort Claims Act – Against the United States as Defendant on Behalf of the FDIC in its Pre-receivership Corporate Capacity)


60.   Lexon restates and re-alleges all previous paragraphs contained in the Complaint as fully stated herein.

61. For a tort claim to be cognizable under the Federal Tort Claims Act, it must be a:

claim[] against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S. Code § 1346(b)(1).

62. The FDIC's negligence occurred in New Orleans, Louisiana.

63. Under Louisiana's general negligence statute, La. C.C. art. 2315, Louisiana courts conduct standard negligence analysis to determine whether to impose liability.

64. Pursuant to the Consent Order, the FDIC had a duty to prohibit First NBC from extending additional credit to Linder.

65. The FDIC breached that duty when it failed to monitor and control First NBC's compliance with the Consent Order.

66. The FDIC breached that duty when it permitted the renewal of the SLOCs through March 2018 in violation of the Consent Order.

67. The FDIC's breach was both the cause-in-fact and the legal cause of Lexon's loss of its right to the collateral for the Bonds and its opportunity to mitigate any losses, costs, and expenses incurred under the Bonds, damages that Lexon believes total $9,985,500.00.

**SECOND CAUSE OF ACTION**

**(FDIC, as Receiver, Improperly Repudiated the SLOCs – 12 U.S.C. § 1821(e))**

68. Lexon restates and re-alleges all previous paragraphs contained in the Complaint as fully stated herein.

69.     The FDIC was obligated by statute to repudiate the SLOCs within a reasonable period following its appointment.

70.     Under the facts and circumstances, the FDIC's decision to delay repudiation for 153 days following appointment was unreasonable.

71.     As a result, the FDIC failed to properly repudiate the SLOCs.

72.     The FDIC's improper repudiation of the SLOCs has caused Lexon to lose its right to the collateral for the Bonds and its opportunity to mitigate any losses, costs, and expenses incurred under the Bonds, damages that Lexon believes total suffer damages in the sum of $9,985,500.00.

### THIRD CAUSE OF ACTION

### (FDIC, as Receiver, Approved the SLOCs – 12 U.S.C. § 1821(d)(20))

73.     Lexon restates and re-alleges all previous paragraphs contained in the Complaint as fully stated herein.

74.     Under 12 U.S.C. § 1821(d)(20), any breach of an agreement by the FDIC, as receiver, with respect to any contract it approved shall be paid as an administrative expense.

75.     ███████████████████████████████████████████████

████████████████████████████████████████████████████████

76.     By approving the SLOCs, the FDIC assumed all obligations under the SLOCs.

77.     As a result, the FDIC's delayed repudiation of the SLOCs more than 150 days after its appointment constituted a breach of an agreement that it had previously approved.

78.     The FDIC's failure to honor Lexon's December 1, 2017 draw request constituted a breach of an agreement that it had previously approved.

13

79.     The FDIC unlawfully accepted the benefits of the SLOCs without assuming and fulfilling its reciprocal contractual obligations.

80.     The FDIC's legally ineffective and improper repudiation after its approval of the SLOCs caused Lexon to suffer damages in the sum of $9,985,500.00 which should be treated as an administrative expense.

81.     As a result of the FDIC's approval of the SLOCs, Lexon had a right to the collateral for the Bonds and the opportunity to mitigate any losses, costs, and expenses incurred under the Bonds which the FDIC breached causing damages that Lexon believes total $9,985,500.00.

**FOURTH CAUSE OF ACTION**

**(In the Alternative, Lexon is entitled to Actual Direct
Compensatory Damages under 12 U.S.C. 1821(e)**

82.     Lexon restates and re-alleges all previous paragraphs contained in the Complaint as fully stated herein.

83.     In the alternative, in the event this Court determines that the FDIC properly repudiated the SLOCs pursuant to 12 U.S.C. 1821(e), Lexon is entitled to recover its actual direct compensatory damages.

84.     Thus, Lexon is entitled to be put back in the same position it occupied before the Bank issued the repudiated SLOCs.

85.     Had the SLOCs not been made, Lexon would not have agreed to issue the Bonds on behalf of Linder.

86.     To restore Lexon to the position it would have assumed without issuance of the SLOCs, Lexon is entitled to damages in the sum $9,985,500.00.

87.     As a result, Lexon's actual direct compensatory damages are the sum of $9,985,500.00.

## FIFTH CAUSE OF ACTION

### (In the Alternative, Ultra Vires Repudiation by the FDIC, as Receiver, for Repudiating the SLOCs Which are Not Contracts Under 12 U.S.C. 1821(e))

88.     Lexon restates and re-alleges all previous paragraphs contained in the Complaint as fully stated herein.

89.     The FDIC's power under 12 U.S.C. § 1821(e) is limited to the repudiation of "contracts" or "leases."

90.     A standby letter of credit is neither a contract nor a lease, and the FDIC has no power to repudiate an irrevocable standby letter of credit pursuant to 12 U.S.C. § 1821(e) or any other provision of law.

91.     Because the FDIC has no power to repudiate the SLOCs, the FDIC's failure to honor Lexon's presentment of the SLOCs is a breach of the FDIC's obligations under them.

92.     As a direct and proximate result of the FDIC's breach, Lexon has lost its right to the collateral for the Bonds and the opportunity to mitigate any losses, costs, and expenses incurred under the Bonds causing damages that Lexon believes total $9,985,500.00.

**WHEREFORE**, Lexon demands judgment against the United States and the FDIC, as receiver for First NBC, as follows:

a. On the First Cause of Action against the United States, damages in an amount to be determined at trial, but believed to be $9,985,500.00;

b. On the Second Cause of Action against the FDIC, in an amount to be determined at trial, but believed to be $9,985,500.00;

c. On the Third Cause of Action against the FDIC, in an amount to be determined at trial, but believed to be $9,985,500.00, to be paid as an administrative expense pursuant to 12 U.S.C. § 1821(d)(20);

d. On the Fourth Cause of Action against the FDIC, damages in an amount to be determined at trial, but believed to be $9,985,500.00;

e. On the Fifth Cause of Action against the FDIC, damages in an amount to be determined at trial, but believed to be $9,985,500.00;

f. All costs and fees incurred by Lexon in prosecuting this action; and

g. Any such further relief that this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Lexon hereby demands a jury trial on all claims and on all issues triable by a jury.

Dated:  January 18, 2018

LOCKE LORD LLP

By:_____/s/ Jason M. Cerise_____
Omer F. Kuebel, III (LA #21682)
Jason M. Cerise (LA #28526)
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 558-5155
Facsimile: (504) 558-5200
rkuebel@lockelord.com
jcerise@lockelord.com

and

Alicia F. Castro (TX # 24069705, *pending pro hac vice filing*)
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1266
acastro@lockelord.com

16

HARRIS BEACH PLLC

By:_____*/s/ Dale A. Worrall*_____
Dale A. Worrall (NY #DW2967, *admitted pro hac vice*)
Daniel E. Guzmán (NY #4985008, *admitted pro hac vice*)
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800
dworrall@harrisbeach.com
dguzman@harrisbeach.com


CARPENTER LAW

By:_____*/s/ Robert H. Carpenter, Jr.*_____
Robert H. Carpenter, Jr. (AL #3471R61R, *admitted pro hac vice*)
2845 Ashley Avenue
Montgomery, Alabama 36109
Telephone: (469) 585-0711
Bob.Carpenter@CarpenterLaw.net

17