UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LEXON INSURANCE COMPANY, INC.** * | | **CASE NO. 18-4245** |
| vs. * | | **SECT. B(1)** |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, ET AL.** * | | **JUDGE LEMELLE** |
| * | | **MAG. VAN MEERVELD** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER JURISDICTION**

**I.     Introduction and summary of the argument**

**MAY IT PLEASE THE COURT**: Plaintiff, Lexon Ins. Co., Inc., filed an amended complaint alleging a single cause of action under the Federal Tort Claims Act (FTCA) against defendant, the United States of America, based on pre-receivership oversight activity by the Federal Deposit Insurance Corporation in its corporate capacity (FDIC-C) over First NBC Bank.[1] The Court lacks subject-matter jurisdiction over Lexon's FTCA claim for two reasons. First, there is no tort duty that applies to an analogous private person acting as the FDIC-C in like circumstances under Louisiana law. 28 U.S.C. §§ 1346(b)(1), 2674. Second, the FTCA's discretionary-function exception insulates the FDIC-C's actions from judicial review. 28 U.S.C. § 2680(a). For these reasons, either of which is independently sufficient, the Court should grant

---

[1] Lexon also sued the FDIC in its capacity as receiver (FDIC-R) for First NBC. *See* Rec. Doc. 1. FDIC-C, as an agency and corporate instrumentality of the United States, functions as a bank regulator and insurer of bank deposits. 12 U.S.C. §§ 1818, 1821(a). FDIC-R acts as receiver for failed institutions, marshaling assets and making distributions to creditors. 12 U.S.C. § 1821(d)(2)(A). These are separate and distinct legal capacities. *See Hartford Cas. Ins. Co. v. F.D.I.C.*, 21 F.3d 696, 706 (5th Cir. 1994). For consistency and clarity, the United States will use abbreviations throughout to distinguish the FDIC's respective corporate (FDIC-C) and receiver (FDIC-R) capacities.

1

this motion and dismiss Lexon's FTCA claim under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

## II. Facts and procedural background

### A. Facts

The underlying facts in this case are familiar to the Court from the FDIC-R's prior motion practice. Rec. Doc. 34. Lexon, as a surety for non-party Linder Oil Company, executed eight performance bonds for regulated oil-and-gas exploration. *Id*. at p. 1. To ensure its indemnification in the event of a loss, Lexon required Linder to post collateral. *Id*. at pp. 1–2. In March 2016, First NBC issued two standby letters of credit to Linder, listing Lexon as beneficiary. *Id*. at p. 2.

In November 2016, First NBC, the FDIC-C, and the Louisiana Office of Financial Institutions entered into a consent order under Section 8(b) of the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1818(b),[2] and Louisiana Bank Law. Rec. Doc. 43-3. During the pendency of this consent order, First NBC's letters of credit to Linder renewed, covering March 2017 through March 2018. Rec. Doc. 34 at p. 2. In April 2017, however, the State of Louisiana closed First NBC and appointed the FDIC-R as receiver. *Id*. Thereafter, the FDIC-R repudiated the letters of credit to Linder. *Id*.

### B. Procedural history

Lexon originally sued only the FDIC-R, alleging four counts under the FDIA. Rec. Doc. 1. The FDIC-R moved to dismiss Lexon's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Rec. Doc. 21. The Court granted the FDIC-R's motion, but afforded Lexon time "to

---

[2] The FDIC-C issues these orders to halt violations of banking laws or regulations as well as to require affirmative action from the insured bank to correct any condition resulting from such violations. *See* FDIC Manual of Examination Policies, § 15-1, at 15.1-6, https://www.fdic.gov/regulations/safety/manual/section15-1.pdf (last visited April 17, 2019). If the bank agrees to the FDIC-C's proposed enforcement action, the FDIC-C will issue a consent order instead of a cease-and-desist order. *Id*.

conduct discovery to make the record complete" and "bring an amended complaint, showing a viable claim." Rec. Doc. 34 at p. 6.

Lexon filed an amended complaint, re-urging its FDIA claims against the FDIC-R, and adding a single FTCA count against the United States based on the FDIC-C's pre-receivership regulatory and oversight activity. Rec. Doc. 43. The FDIC-R re-urged its motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which is currently pending under submission with the Court. Rec. Doc. 55.

## III.  Argument

### A.  Standard of review

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the subject-matter jurisdiction of a federal district court. A claim is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Because federal courts are courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See*, *e.g.*, *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Thus, a federal court must dismiss an action whenever it appears that subject-matter jurisdiction is lacking. *Id.* The burden of proof on a motion to dismiss under Rule 12(b)(1) is on the party asserting jurisdiction. *Id.*

In considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction "a court may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

**B.     There is no tort duty that applies to an analogous private person acting as the FDIC-C in like circumstances under Louisiana law.**

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.*

Lexon filed suit against the United States under the FTCA, which constitutes a "limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). Under the FTCA, the United States is liable for tort claims "under circumstances where the United States, if a private person, would be liable to the claimant" under state law where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 (the United States' liability for tort claims is "in the same manner and to the same extent as a private individual under like circumstances" according to the law of the state where the alleged tort occurred); *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991); *Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law . . . ."); *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006) (The FTCA "holds the government liable as if it were a defendant in state court . . . .").

The Fifth Circuit has held that "[w]hether a private person in 'like circumstances' would be subject to liability is a question of sovereign immunity . . . ." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 288 (5th Cir. 2012) (citing *United States v. Olson*, 546 U.S. 43, 44 (2005)). That is to say, "[i]f the alleged conduct would not impose liability in the private sector under local law, then the court lacks jurisdiction under the FTCA." *Appleton v. United States*, 180

F. Supp. 2d 177, 184 (D.D.C. 2002); *see also Barnson v. United States*, 531 F. Supp. 614, 619–20 (D. Utah 1982) ("The failure to establish an analogous private liability is well established to be a jurisdictional defect under the FTCA.").

Lexon claims to assert a cause of action for negligence under LA. CIV. CODE art. 2315,[3] which provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." This article "codifies claims for general negligence which the jurisprudence considers under a duty-risk analysis." *Jolliff v. United States*, 2012 WL 2449952, at *3 (E.D. La. June 27, 2012) (citing *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09); 16 So. 3d 1065, 1085–86). The duty-risk analysis requires Lexon to demonstrate five separate elements: (1) the FDIC-C had a duty to conform its conduct to a specific standard of care; (2) the FDIC-C failed to conform its conduct to the appropriate standard; (3) the FDIC-C's substandard conduct was a cause-in-fact of Lexon's injuries; (4) the FDIC-C's substandard conduct was a legal cause of Lexon's injuries; and (5) Lexon's actual damages. *Id.* "If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable." *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Pitre v. La. Tech Univ.*, 95-1466 (La. 5/10/96); 673 So. 2d 585, 590).

"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Entergy Corp.*, 2006-477 (La. 12/18/06); 944 So. 2d 564, 579. "Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties." *Joseph v. Dickerson*, 99-1046 (La. 1/19/00); 754 So. 2d 912, 916.

On that point, numerous federal courts have held that the FDIC-C and other similar federal bank regulators neither assume nor owe a duty of care to the banks they supervise, much less to

---

[3] Rec. Doc. 43 at p. 12, ¶ 63.

third-parties like Lexon who may derive some benefit from the regulated banks' lending activities. *See*, *e.g.*, *Fed. Savs. and Loan Ins. Corp. v. Smith*, 721 F. Supp. 1039, 1048 (E.D. Ark. 1989) ("[T]he FSLIC does not usually owe a duty of care to those in the position of [a borrower]. Absent a duty, there can be no breach of duty and there can be no liability [under the FTCA]."); *First State Bank of Hudson Cty. v. United States*, 599 F.2d 558, 563 (3d Cir. 1979); *Fed. Savs. & Loan Ins. Corp. v. Shelton*, 789 F. Supp. 1367, 1369 (M.D. La. 1992) ("It is clear that the FDIC[-C] owes no duty to manage a bank."); *FSLIC v. Derbes*, 1986 WL 432, at *2, n.1 (E.D. La. Nov. 13, 1986) ("[T]he FHLBB does not, by merely undertaking regulation and supervision of financial institutions, assume a duty to one who is injured by the unlawful practices of a regulated institution."); *F.D.I.C. v. Butcher*, 660 F. Supp. 1274, 1282 (E.D. Tenn. 1987) ("[T]he defendants attempt to set forth the negligence claim by several methods, all of which impose a duty on the FDIC where no duty exists.").[4] This body of law is so well settled and consistent that it is sometimes referred to as the FDIC "no-duty rule." *See*, *e.g.*, *F.D.I.C. v. Raffa*, 935 F. Supp. 119, 123–24 (D. Conn. 1995) (noting near universal acceptance of bright-line, no-duty rule). This no-duty rule exists because federal banking regulations were "created to allow the agency to protect its insurance funds, not to establish a deep pocket to reimburse those who would not have lost money had the agency taken greater steps to protect them." *Smith*, 721 F. Supp. at 1048 (citation omitted).

---

[4]  *See also In re Cont'l Ill. Secs. Litig.*, 1985 WL 3302, at *3 (N.D. Ill. Oct. 24, 1985) ("[C]ourts have uniformly held that the statutes authorizing the examination of national financial institutions do not impose a duty on the federal government in favor of those institutions."); *F.D.I.C. v. Raffa*, 935 F. Supp. 119, 124 (D. Conn. 1995) ("[T]he FDIC's duty is owed, not to bank directors or officers, but to the insurance fund it is charged with protecting and to the banking public."); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 210, 215–16 (E.D.N.Y. 1979) ("[T]he failure of the FDIC to discover fraud or weakness, or even to disclose such adverse information if it is discovered, does not establish a claim for relief against the United States.").

Lexon won't find a tort duty arising in like circumstances under Louisiana law either. It is axiomatic that no private party provides the exact sort of banking oversight the FDIC-C performs,[5] so the Supreme Court has instructed lower courts to consider Good Samaritan liability that could arise if a private party did undertake an analogous function under state law. *See Olson,* 546 U.S. at 45–47; *In re FEMA Trailer*, 668 F.3d at 288 ("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy."); *cf. Smith*, 721 F. Supp. at 1048–49 (alleging Good Samaritan liability under Arkansas law against the FSLIC). The Louisiana Supreme Court has adopted the standard for Good Samaritan liability found in the *Restatement (Second) of Torts*, § 324A. *See Bujol v. Entergy Servs.*, 2003-0492 (La. 5/25/04); 922 So. 2d 1113, 1128–29. Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Any attempt to allege Good Samaritan liability against the FDIC-C under § 324A fails for several reasons. First, Lexon's amended complaint does not allege "physical harm resulting from

---

[5] The closest analogy under Louisiana law is to the oversight and regulatory functions of the Louisiana Office of Financial Institutions. *See* LA. REV. STAT. §§ 6:101, *et seq*. The Supreme Court, however, has expressly rejected imposition of tort duties in a FTCA case based on state-law liabilities of public entities. *See Olson*, 546 U.S. at 46. Similarly, "a federal regulation cannot establish a duty owed to plaintiff under state law." *Tindall v. United States*, 901 F.2d 53, 56 n.8 (5th Cir. 1990); *Johnson v. Sawyer*, 47 F.3d 716, 727–28 (5th Cir. 1995).

[the FDIC-C's] failure to exercise reasonable care;" rather, it alleges purely economic harm.[6] *See* Rec. Doc. 43 at p. 12, ¶ 67 & p. 16 (alleging $9,985,000 in damages). Second, Lexon does not allege that the FDIC-C "increase[d]" Lexon's risk of economic harm by executing the consent order. Rather, Lexon complains that the FDIC-C didn't decrease Lexon's risk by forcing First NBC's non-renewal of the standby letters of credit. *Id.* at p. 6, ¶ 29. But "[t]he test [under § 324A(a)] is not whether the risk was increased over what it would have been if the defendant had not been negligent." *Myers v. United States,* 17 F.3d 890, 903 (6th Cir. 1994). "Rather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all." *Id.* Third, despite Lexon's allegations to the contrary, the terms of the consent order—specifically ¶¶ 4(a) and 4(b)—do not impose a duty on the FDIC-C to approve or deny additional credit. *Compare* Rec. Doc. 43-3 at p. 9 *with* Rec. Doc. 43 at p. 6, ¶ 25. Rather, the plain language of those terms squarely imposes a duty upon "the Bank" to "not extend . . . any additional credit." Rec. Doc. 43-3 at p. 9.[7] Fourth, Lexon does not allege that it suffered economic

---

[6] Most jurisdictions that have adopted § 324A preclude recovery for purely economic harms. *See, e.g., In re Washington Mut., Inc.*, 418 B.R. 107, 113 (Bankr. D. Del. 2009). While Louisiana courts have not yet addressed the distinction between physical and economic harms in Good Samaritan cases, every Louisiana case addressing liability under § 324A has applied it to allegations of physical, not economic, harm. *See, e.g., Bujol, supra* (death in flash fire); *Mundy v. Dep't of Health and Human Res.*, 620 So. 2d 811 (La. 1993) (stabbing); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So. 2d 1364 (La. 1984) (gunshot); *Sutter v. Audubon Park Comm'n*, 533 So. 2d 1226 (La. App. 4 Cir. 7/7/88) (gunshot); *Rhodes v. Winn-Dixie Louisiana, Inc.*, 638 So. 2d 1168 (La. App. 1 Cir. 6/24/94) (physical injury); *Schulker v. Roberson*, 91-1228 (La. App. 3 Cir. 6/5/96), 676 So. 2d 684 (car accident); *Dartlone v. Louisiana Power & Light Co.*, 33,597 (La. App. 2 Cir. 6/21/00), 763 So. 2d 779 (electrocution); *Graves v. Riverwood Int'l Corp.*, 38,842 (La. App. 2 Cir. 8/18/04), 881 So. 2d 140 (asbestos exposure); *Verdin v. Rogers*, 05-664 (La. App. 5 Cir. 3/14/06); 926 So. 2d 603 (electrical shock); *Brookshire Bros. Holding v. Total Containment, Inc.*, 2006 WL 3095651 (W.D. La. Oct. 27, 2006) (leaking pipes); *Hernandez v. Dedicated TCS, L.L.C.*, 2017 WL 2868803 (E.D. La. July 5, 2017) (exposure to hazardous vapors); *Poirrier v. Richardson*, 2018 WL 1471458 (E.D. La. Jan. 4, 2018) (drug toxicity); *Watson v. Arkoma Dev., LLC*, 2018 WL 6274070 (W.D. La. Nov. 15, 2018) (contamination of property).

[7] *Accord* FDIC Manual of Examination Policies, *supra* n. 2 at 15.1-6 ("Cease and desist orders generally contain provisions that require a bank . . . to take, or prohibit a bank . . . from taking, specific actions relating to inappropriate practices, violations, or conditions.").

harm because of reliance on the terms of the FDIC-C's consent order. Rec. Doc. 43 at p. 6. In fact, Lexon doesn't even allege its pre-receivership knowledge of the consent order. *Id*.

In sum, exercising FTCA subject-matter jurisdiction over Lexon's claim would require not only rejection of decades of settled law on the no-duty rule for federal banking regulators, but would also require a novel and unprecedented extension of Good Samaritan tort liability under § 324A and Louisiana law. "The effect of the [FTCA]," however, is "not to visit the Government with novel and unprecedented liabilities," but to waive immunity from suit for "recognized causes of action." LESTER S. JAYSON AND ROBERT C. LONGSTRETH, 1 HANDLING FEDERAL TORT CLAIMS § 3.07 (LexisNexis 2008). Because Lexon's claim constitutes an unrecognizable deviation from settled tort-law principles, no analogous private duty exists and subject-matter jurisdiction under the FTCA, therefore, is lacking.

### C. Even if a tort duty exists, the discretionary-function exception of the FTCA bars Lexon's claim.

In addition to the analogous-private-duty requirement, the FTCA contains other important limitations on the waiver of sovereign immunity, including a discretionary-function exception, which provides:

> The provisions of [the FTCA] shall not apply to—any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The discretionary-function exception is thus a form of retained sovereign immunity." *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 317 (5th Cir. 2009) (internal citation omitted). "It is intended to 'assure protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions.'" *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 26–27 (1953)).

Under the Supreme Court's traditional two-part test for FTCA discretionary-function immunity, "a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" since "[i]n this event, the employee has no rightful option but to adhere to the directive." *Id.* If, however, "a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *St. Tammany Parish*, 556 F.3d at 323 (citing *United States v. Gaubert*, 499 U.S. 315, 329 (1991)).

"[A]ssuming the challenged conduct involves an element of judgment," the Court next "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz* at 536. "The basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz* at 536–37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal marks omitted); *see also St. Tammany Parish*, 556 F.3d at 323–24. In this regard, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* (citing *Gaubert*, 499 U.S. at 324). Further, the focus of the inquiry in this second prong is not on the federal actor's actual consideration of policy-based factors, but rather "the nature of the actions taken and on whether they are susceptible to a policy analysis." *Gaubert*, 499 U.S. at 325; *see also Salazar v. United States*, 633 F. Supp. 2d 232, 237 (E.D. La. 2009) (Lemelle, J.) (applying discretionary-function exception).

In *Berkovitz* step one, Lexon cannot identify a violation of any federal statute, regulation, or policy that mandates a specific course of conduct for the FDIC-C to follow in its regulation and oversight of banks. Rec. Doc. 43. For instance, while Lexon argues that the consent order contains a "nondiscretionary mandate to cease providing credit to financially troubled borrowers,"[8] the plain language of the consent order imposes this "nondiscretionary mandate" on First NBC, not the FDIC-C. Rec. Doc. 43-3 at p. 9, ¶¶ 4(a)–(b).[9] More to the point, the Fifth Circuit has specifically held that a "purported negligent failure to supervise" claim based on "failure to . . . comply with . . . cease and desist orders, and supervisory orders" is "frivolous" and "protected by the discretionary function exception." *ALX El Dorado, Inc. v. Sw. Sav. and Loan Ass'n*, 36 F.3d 409, 411, n.15 (5th Cir. 1994) (cleaned up); *see also id.* at 411 ("[R]elevant statutes provided the banking agencies with broad authority to supervise financial institutions; such statutes were not couched in mandatory terms."); *F.D.I.C. v. Irwin*, 916 F.2d 1051, 1054 (5th Cir. 1990) (noting that the "broad grant of authority" to the Office of Comptroller of Currency and "scant legislative direction thereafter disables [plaintiff] from citing any statutory or regulatory violation that would lift this case cleanly outside of the discretionary function exception."); *Ard v. F.D.I.C.*, 770 F.

---

[8]   Rec. Doc. 43 at p. 6, ¶ 28.

[9]   *See also* n. 7, *supra*. Unsurprisingly, the FDIC Manual of Examination Policies is replete with discretionary language in its discussion of Section 8(b) cease-and-desist and consent orders. *Id.* at 15.1-6 ("Formal actions <u>may be pursued</u> before a violation or unsafe or unsound practice occurs."); ("Under certain circumstances, the enforcement action <u>may require</u> the institution or IAP to make restitution."); ("The failure of a bank to comply with any cease and desist order or consent order that has become final <u>can be the basis</u> for subsequent Section 8(a) termination of insurance action."); ("Such failure also <u>can be the basis</u> for the FDIC petitioning the U.S. District Court to enforce the order. Civil money penalties <u>may also be imposed</u> against the bank."); ("When an institution or IAP does not agree to stipulate to a proposed enforcement action, the FDIC <u>may pursue</u> a cease and desist order."); ("If the party or parties served with the Notice of Charges does not appear at the hearing, they <u>may be deemed to have consented</u> to the issuance of the cease and desist order."); ("The FDIC's Board <u>may issue</u> a cease and desist order after the hearing.") (emphases added).

Supp. 2d 1029, 1036 (C.D. Cal. 2011) ("[P]laintiffs have not established that the . . . FDIC violated a mandatory directive . . . .").

Elsewhere, Lexon argues that "[t]he FDIC[-C] breached its duty by failing to mandate First NBC's observance and compliance with the Consent Order, including Paragraphs 4(a) and 4(b)." Rec. Doc. 43 at p. 6, ¶ 26. Again, even assuming such a duty exists, this allegation of negligence is insufficient to satisfy *Berkovitz* step one since "[t]he discretionary function [exception] applies even when the discretionary acts themselves constitute negligence." *Kiehn v. United States*, 984 F.2d 1100, 1106 n.10 (10th Cir. 1993); *Lively v. United States*, 870 F.2d 296, 298 (5th Cir. 1989); 28 U.S.C. § 2680(a) (discretionary-function exception applies "whether or not the discretion be abused.").[10] Indeed, application of the discretionary-function exception is a threshold issue that should precede any negligence analysis. *Johnson v. United States*, 949 F.2d 332, 335 (10th Cir. 1991).

In *Berkovitz* step two, numerous cases have held that various discretionary actions of federal banking regulators like the FDIC-C are susceptible to a policy analysis based on economics and other public-policy factors. *See ALX El Dorado, Inc.*, 36 F.3d at 412 ("[P]laintiffs have alleged nothing that would suggest that the statutory discretion exercised by the banking agencies . . . was not based on considerations of public policy."); *In re Cont'l Ill. Secs. Litig.*, 1985 WL 3302, at *6 (N.D. Ill. Oct. 24, 1985) ("We believe all of the [Office of Comptroller of Currency's] actions in examining Continental Bank fall within the discretionary function exception to the FTCA."); *Ard*,

---

[10] So while the United States disputes Lexon's characterization of this alleged negligent breach by the FDIC-C, "factual issues concerning negligence are irrelevant to the threshold issue whether the . . . actions are shielded from liability by the discretionary function exception." *Kiehn,* 984 F.2d at 1108 (citing *Johnson v. United States*, 949 F.2d 332, 340 (10th Cir. 1991)). Courts, therefore, must exercise caution not to "confuse negligence with immunity." *Id.* at 340, 338 ("[T]he dispositive threshold issue is not whether the [federal defendant] was negligent, but rather what was the nature of the [federal defendant's] decisions.").

12

770 F. Supp. 2d at 1037 ("[A] long line of cases . . . have held that the discretionary function exception insulates the United States from liability for claims arising out of the regulation of banking institutions.").

The Supreme Court's decision in *Gaubert*, *supra*, which addressed a FTCA claim arising out of banking regulatory activity, mandates this conclusion. The plaintiff in *Gaubert* alleged that the Federal Home Loan Bank Board[11] and Federal Home Loan Bank–Dallas "had been negligent in carrying out their supervisory activities." 499 U.S. at 318. These federal banking regulators had "provided regulatory and financial advice" to a savings and loan on a merger, recommended terminations and hiring, advised on bankruptcy and litigation, mediated salary disputes, and urged conversion to a federal charter. *Id*. at 319–20. In step one of the discretionary-function analysis, the Supreme Court found that the federal banking regulators "possessed broad statutory authority to supervise financial institutions" and "were not bound to act in a particular way; the exercise of their authority involved a great element of judgment or choice." *Id*. at 329 (internal citation omitted). In step two, the Supreme Court concluded that the banking regulatory activities were taken "to protect the FSLIC's insurance fund; thus it cannot be disputed that this action was based on public policy considerations." *Id*. at 332.

These same conclusions apply with equal force to Lexon's FTCA claim based on the FDIC-C's oversight activities. The FDIC-C's decision to seek a consent order with First NBC, its selection of consent-order terms, and its monitoring of First NBC's compliance therewith all involved elements of choice susceptible to a policy-based analysis. The discretionary-function exception, therefore, deprives the Court of subject-matter jurisdiction over Lexon's FTCA claim.

---

[11] This since-abolished agency performed duties eventually assigned in part to the FDIC-C. *Gaubert*, 499 U.S. at 317 n.1.

**IV.     Conclusion**

    For these reasons, the Court should grant the United States' motion and dismiss Lexon's FTCA claim for lack of subject-matter jurisdiction.

                                      Respectfully submitted,

                                      PETER G. STRASSER
                                      UNITED STATES ATTORNEY

                                      *s/Peter M. Mansfield*
                                      PETER M. MANSFIELD (# 28671)
                                      Assistant United States Attorney
                                      Chief, Civil Division
                                      650 Poydras Street, Suite 1600
                                      New Orleans, Louisiana  70130
                                      Telephone:  (504) 680-3047
                                      Facsimile: (504) 680-3184
                                      Peter.Mansfield@usdoj.gov