UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEXON INSURANCE COMPANY, INC.,** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4245** |
| **FEDERAL DEPOSIT INSURANCE CORP., AS RECEIVER FOR FIRST NBC BANK** | **SECTION "B"(1)** |

## ORDER & REASONS

Before the Court are defendant Federal Deposit Insurance Corporation as receiver for First NBC Bank's ("FDIC-R") "Motion to Dismiss for Failure to State a Claim for Relief" (Rec. Doc. 55), plaintiff Lexon Insurance Company Incorporated's ("Lexon") "Amended Complaint" (Rec. Doc. 43) and plaintiff's "Memorandum in Opposition to Defendant's Memorandum in Support of Its Motion to Dismiss for Failure to State a Claim" (Rec. Doc. 63). For the reasons discussed below,

**IT IS ORDERED** that defendant's construed motion for summary judgment (Rec. Doc. 55)[1] is **GRANTED** with respect to count two of

---

[1] Rule 12(b)(6) is designed to test the pleadings. Although defendant has attached exhibits to their amended complaint, this Court finds that the attached exhibits are beyond the four-corners of the pleading and has elected to construe defendant's motion to dismiss as a motion for summary judgment. "A district court may, in its discretion, treat a motion to dismiss as a motion for summary judgment and consider evidence outside of the pleadings." *Beiller v. Atlantic Specialty Ins. Co.*, No.16-512, 2016 WL 915424, at *2 (E.D. La. March 10, 2016); *see* Fed. R. Civ. P. 12(d); *see also Soley v. Star & Herald Co.*, 390 F.2d 364, 366 (5th Cir. 1968). Here, although plaintiff has attached exhibits to their complaint, the exhibits are those that are traditionally outside of the pleadings. As such, this Court will construe defendant's motion to dismiss for failure to state a claim as a motion for summary judgment under Rule 56, in

1

plaintiff's claim relative to repudiation of the **Standby** Letters of Credit ("SLOCs") (Emphasis added); count three of plaintiff's claim for breach of contract; count four of plaintiff's claim relative to actual and compensatory damages; and count five of plaintiff's claim that SLOCs are not contracts. The amended complaint against FDIC-R is dismissed.

**FACTS AND PROCEDURAL HISTORY**

The facts giving rise to defendant FDIC-R's current motion are detailed in this Court's Order and Reasons regarding defendant's first motion to dismiss for failure to state a claim. *See* Rec. Doc. 34; *see also* Rec Doc. 21.

In March of 2016, plaintiff Lexon, as surety, executed eight bonds on behalf of non-party Linder Oil that secured offshore mineral leases with the United States Department of Interior, Bureau of Ocean Energy Management ("BOEM"). Rec. Doc. 43 at ¶ 10. On March 24, 2016, First NBC Bank issued two standby letters of credit relating to the bonds issued by plaintiff. *Id*. at ¶ 11-12. After the SLOCs were issued, First NBC Bank's financial stability deteriorated and was subsequently closed by the State of Louisiana. *Id*. at ¶ 32. Defendant was appointed receiver for First NBC Bank on April 28, 2017. *Id*. On September 28, 2017, 153 days after the

---

accordance with Rule 12(d). *See Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 610 (E.D. La. 1998) ("When matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion is converted into a motion for summary judgment.").

appointment of defendant as receiver, defendant repudiated the SLOCs. *Id*. at ¶ 52. On December 1, 2017, 64 days after the SLOCs were repudiated, plaintiff requested to draw down the entire amount secured by the SLOCs. *Id*. at ¶ 53. At the time of the requested draw, plaintiff had made no requests to draw on the SLOCs, and no claims had been made on the bonds by BOEM. *See generally* Rec. Doc. 43; *see also* Rec. Doc. 55-1 at 4-5.

On April 25, 2018, Plaintiff filed a four-count complaint against FDIC, seeking "damages of $9,985,500.00 resulting from the FDIC's failure to honor, and improper repudiation of, [the] two [letters of credit] issued by [First NBC Bank]." Rec. Doc. 1. Defendant moved to dismiss all claims for failure to state a claim on July 2, 2018. *See* Rec. Doc. 21 at 1. That motion was subsequently granted by this court, in favor of defendant. *See* Rec. Doc. 34. An order was issued on September 7, 2018, dismissing Lexon's claim without prejudice to Lexon's right to bring an amended complaint within forty (40) days from the order. *Id*. at 6-7.[2]

Thereafter, on January 18, 2019, Lexon filed an amended five-count complaint against FDIC, again seeking damages of

---

[2] The original order setting a 40-day deadline for plaintiff Lexon to file an amended complaint was extended *twice*. First, an order was issued on October 2, 2018, extending Lexon's deadline to file until December 21, 2018. The deadline was extended a second time by an order dated November 27, 2018, extending Lexon's deadline to file until January 21, 2019. *See* Rec. Docs. 37 & 39. Plaintiff timely filed their amended complaint within the extended deadlines on January 18, 2019. *See* Rec. Doc. 43.

3

$9,985,500.00. *See* Rec. Doc. 43. The amended complaint alleges causes of action: (1) under the Federal Tort Claims Act ("FTCA") against the United States as a defendant on behalf of the FDIC in their pre-receivership corporate capacity ("FDIC-C")[3]; (2) for failure to timely repudiate the SLOCs in violation of 12 U.S.C. § 1821(e); (3) for breach of contract under 12 U.S.C. § 1821(d)(20) by defendant FDIC-R, in approving the SLOCs in writing; (4) that plaintiff is entitled to actual and compensatory damages under 12 U.S.C. § 1821(e); and (5) defendant's lack of authority to repudiate the SLOCs because the SLOCs are not considered contracts. *See id*. Defendant FDIC-R moves to dismiss a majority of plaintiff Lexon's claims for failure to state a claim. *See* Rec. Doc. 55.

**LAW AND ANALYSIS**

   **Motion for Summary Judgment Standard**

   Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v.*

---

[3] Plaintiff's claim under the Federal Tort Claims Act is against the FDIC in their pre-receivership corporate capacity (FDIC-C). That claim is the subject of a separate motion to dismiss for lack of subject matter jurisdiction. *See* Rec. Doc. 70. The instant motion only concerns the FDIC in their capacity as receiver for First NBC Bank (FDIC-R).

4

*Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

**Claim for Contractual Damages and FDIC-R's Alleged Failure to Timely Repudiate the SLOCs**

Defendant argues that plaintiff has failed to state a claim for relief in their amended complaint because the damages asserted by plaintiff are not representative of amounts "[d]ue [a]nd [o]wing." Rec. Doc. 55-1, at 7. In support, defendant asserts: (1) the standby letters of credit are contracts for the purposes of 12 U.S.C. § 1821(e); (2) the FDIC-R properly repudiated the SLOCs; (3) plaintiff failed to show actual and compensatory damages; (4) and that even in the event that plaintiff obtained funds, plaintiff would be required to return any funds "to the extent the BOEM does not make a claim against the bonds." *See id*. at 7-9, 11. Plaintiff argues that damages need not be due and owing because defendant's failure to properly repudiate the SLOCs entitles them to "normal contract law damages." *See* Rec. Doc. 63 at 13.

When the FDIC is appointed receiver over a failed financial institution, Congress has expressly authorized the FDIC to repudiate: (1) contracts to which the institution is a party; (2) that the receiver determines to be burdensome; and (3) that in the receiver's discretion "promote the orderly administration of the institution's affairs." *See* 12 U.S.C. § 1821(e)(1). The receiver must determine whether to repudiate a contract within a reasonable time following their appointment as receiver. *Id*. Generally, the FDIC has "'broad authority' to repudiate contracts that were entered into before its appointment as a receiver." *NCB Mgmt. Services, Inc. v. F.D.I.C.*, 843 F. Supp. 2d 62, 68 (D.C.C. 2012) (citing *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236. 241 (D.C.C. 1995)).[4]

A claim for damages resulting from the timely repudiation of a contract is "limited to actual direct compensatory damages" which are "determined as of the date of the appointment of the . . . receiver." *See* 12 U.S.C. § 1821(e)(3)(A); *see also NCB Mgmt. Services, Inc.*, 843 F. Supp. 2d at 68 (stating proper repudiation of a contract by the FDIC "limits the universe of damages that a plaintiff can recover."). Although the FDIC has broad authority to repudiate a contract, the FDIC must make the determination to

---

[4] The Stand-By Letters of Credit ("SLOCs") in this case are considered contracts for purposes of 12 U.S.C. § 1821(e). *See Credit Life Ins. Co. v. F.D.I.C.*, 870 F. Supp. 417, 426 (D.N.H 1993). Plaintiff fails to show cause to change a prior finding on this point. *See* Rec. Doc. 34 at 5.

repudiate the contract within a reasonable time and adhere to the guidelines set forth in § 1821(e)(1)&(2). *See id.* at 68.

If a contract has been repudiated in a timely fashion, then "a recoverable claim must represent an amount *due and owing* at the time of declaration of insolvency." *Citibank (S. Dakota), N.A. v. F.D.I.C.*, 827 F. Supp. 789, 791 (D.D.C. 1993)(emphasis added). In *Credit Life Ins. Co. v. F.D.I.C.*, the United States District Court for the District of New Hampshire held, "If FDIC-Receiver had authority to [repudiate] the letter of credit, no damages would be due as long as the triggering event . . . had not occurred prior to the date the bank was declared insolvent." *Credit life Ins. Co. v. F.D.I.C.*, 870 F. Supp. 417, 425-26 (D.N.H. 1993).[5]

---

[5] *See also Granite Re, Inc. v. Nat'l Credit Union Admin. Bd.*, No. 1:17-213, 2018 WL 4677911, at *3 (D.N.D. July 9, 2018) (stating "At the time of the NCUAB's appointment as conservator for Citizens (June 23, 2017), Granite had *not yet made a draw request* on the Letter of Credit. In fact, Granite did not present its first sight draft on the Letter of Credit until July 3, 2017. Because the triggering event under the Letter of Credit had not occurred as of the date of the NCUAB's appointment as conservator, the Court finds Granite is *not entitled to damages* resulting from the repudiation of the Letter of Credit.")(emphasis added). *Granite* is similar to the case at issue; however, *Granite* deals specifically with 12 U.S.C. § 1787(c)(3)(A), statute nearly identical in substance and verbiage to 12 U.S.C. § 1821(e)(3)(A). *Compare* 12 U.S.C. § 1787(c)(3)(A), *with* 12 U.S.C. § 1821(e)(3)(A).

12 U.S.C. § 1787(c)(3)(A) deals specifically with the National Credit Union Administration ("NCUA") as opposed to the FDIC. *Granite* analyzes a similar issue under this different statute that uses the same language, grants the same power, and imposes the same limitations on the NCUA that are imposed on the FDIC by § 1821(e)(3)(A). Although this case concerns a different statute, the Southern District of New York has held that, "[g]iven the 'materially identical language in 12 U.S.C. § 1821(e) and 12 U.S.C. § 1787(c), the same reading of § 1821(e) applies to § 1787(c)." *See Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, No. 13 CIV. 6721 DLC, 2014 WL 297518, at *5 (S.D.N.Y. Jan. 28, 2014), aff'd, 775 F.3d 145 (2d Cir. 2014)(citing *United States v. Robinson*, 702 F.3d 22, 33–34 (2d Cir. 2012)(stating "[W]here Congress has used materially identical language, it 'obviously' intended the same purpose."). Therefore, the same interpretation of § 1787(c)(3)(A) in *Granite* is applicable to the current interpretation of § 1821(e)(3)(A) in case at issue.

If the FDIC does not adhere to the guidelines of § 1821(e) when repudiating a contract, it results in an improper repudiation. *See id.* at 69-70; *see also Country Club Assocs. Ltd. V. FDIC*, 918 F. Supp. 429, 437 (D.D.C. 1996). Failure to properly repudiate results "in a continuation of the contractual obligation and the application of contractual principles to the dispute." *See Country Club Assocs. Ltd,* 918 F. Supp. at 437. Thus, a plaintiff is entitled to recover all manner of contractual damages if there has been a failure to repudiate pursuant to § 1821(e). *See id.*

Whether the FDIC has repudiated a contract within a reasonable period following its appointment as receiver is a factual inquiry which, "necessarily depends on the surrounding facts and circumstances" of the case. *See Bldg. Four Shady Oaks Mgmt., L.P. v. F.D.I.C.*, 504 Fed. Appx. 292, 295 (5th Cir. 2012). This factual inquiry does not concern only the timing of repudiation but encompasses all "surrounding circumstances" in a determination of reasonableness. *Id*. Further, *prejudice* to the parties may be considered in a determination of whether repudiation is reasonable. *Id*. (stating that it is less reasonable for the FDIC to delay the repudiation of a contract when a party will suffer "great damage as a result" of the repudiation than when the party will "suffer no damages as a result.").

The Fifth Circuit has held that repudiating a lease agreement, 157 days after the FDIC's appointment as receiver, was reasonable when it was apparent that the party suffered no prejudice in the delay. *Bldg. Four Shady Oaks Mgmt., L.P.*, 504 Fed. Appx. 292, 295. However, in *Central Buffalo Project Corp. v. F.D.I.C.*, the Western District of New York held that a "roughly 100-day delay before repudiation was not within a 'reasonable time'." *Central Buffalo Project Corp. v. F.D.I.C.*, 29 F. Supp. 2d 164, 170 (W.D.N.Y. 1998). In *Central Buffalo Project Corp.*, the repudiation of a lease agreement was made 181 days after the RTC was appointed as receiver, and "101 days after the RTC learned that [the bank] would not be interested in the leases." *Id.* at 166. The court cites testimony from an RTC staff attorney who claimed that when it was evident the banks were not interested in the leases, "it was a fairly clear no-brainer that the leases would be repudiated." *Id.* at 169. Therefore, because the RTC, as receiver, knew that the leases were certain to be repudiated, the delay in repudiation of 101 days was unreasonable. *Id.* at 170 (stating "[T]here appears to be no reason why the leases could not have been repudiated at a much earlier date.").

Here, a determination whether plaintiff is entitled to actual direct compensatory damages turns on whether the repudiation of the SLOCs was reasonable. There is no genuine issue of material fact as to whether the FDIC repudiated the SLOCs in a timely

10

fashion or whether the plaintiff Lexon suffered prejudice, e.g. actual direct compensatory damages.

There is neither factual support for a finding of actual direct (or impending) compensatory damages nor material disputed facts or circumstances to show an unreasonable repudiation of the SLOCs. Plaintiff's amended complaint contains several attachments and cites deposition testimony from the Post Closing Asset Manager ("PCAM 1") who oversaw the credit portion of the receivership of First NBC Bank, as well as email exchanges between the Lead Post Closing Asset Manager ("the Lead PCAM") and PCAM 1. *See id*. at ¶¶ 35-39.

On May 7, 2019, in an email to the Resolution and Closing Manager ("Supervisor") the Lead PCAM stated, "There are Letters of Credit, but they are standby for beneficiaries, not lines for the company. Those LC's are being repudiated." Rec. Doc. 43-12, Exhibit F, Email from the Lead PCAM to Supervisor, May 7, 2017. Plaintiff asserts that the Lead PCAM's email to Supervisor conclusively establishes that defendant FDIC-R had made the determination to repudiate the letters as early as May 7, 2017. However, in PCAM 1's deposition testimony, PCAM 1 notes that *the FDIC-R* had not decided that the SLOCs were going to be repudiated. Deposition Transcript of PCAM 1, at 80. PCAM 1 provides that the email produced by the Lead PCAM was merely, "something [the Lead PCAM] felt as though we were seriously considering." *Id*. at 79. When

PCAM 1 was asked whether this was a determination by the FDIC-R that the SLOCs were in fact being repudiated, PCAM 1 replied "No . . . there was no case . . . anything that we do to get authorization [for repudiation] takes a case. No case had been approved, so no decision had been made."[6] *Id.* at 80. Further, PCAM 1 stated "[the Lead PCAM's comment] is a comment that would have been outside [the] process[7] and would have been . . . [the Lead PCAM's] *interpretation* of the actions we were taking, not . . . the action plan that was in place." *Id.* at 82 (emphasis added). Thus, the Lead PCAM's informal comment in the email sent to his supervisor is not a conclusive decision by the FDIC-R to repudiate but a mere presumption that repudiation was forthcoming.

This purportedly shows that defendant was aware of the allegedly imminent repudiation for 149 days before they finally repudiated. *Id.* at ¶ 35–36.[8] However, even if defendant FDIC-R reviewed the SLOCs as burdensome and noted the possibility of a repudiation, that alone does not arise to the level of a conclusive decision to repudiate the SLOCs by the FDIC-R. We cannot pick and

---

[6] The process in which the PCAMs made decisions is as follows: PCAM 1 (Credit) and PCAM 2 (Operations) would periodically give recommendations to the Lead PCAM, who in turn "put together . . . the whole report, and then sent it back to [PCAM 2] and [PCAM 1] for review before [the PCAMs] would submit it." These reports were then submitted to the Resolution and Closing Manager ("Supervisor"), supervisor to PCAM 1, PCAM 2, and the Lead PCAM.
[7] *See supra* n. 6.
[8] Attached to plaintiff's amended complaint is deposition testimony from PCAM 1. In his testimony, PCAM 1 stated "[referring to May 2, 2017 FDIC letter]' with the research we had done, we felt that – the FDIC felt it was burdensome."

choose some factual scenarios but must consider all material facts and circumstances that occurred up to the point of repudiation.

In addition to the foregoing, defendant FDIC-R engaged in several settlement attempts with non-party Linder Oil and other acts short of repudiating the SLOCs during the 153-day period between the FIDC-R's appointment as receiver and subsequent repudiation. *See* Deposition Transcript of PCAM 1, at 49-50 (stating "[the FDIC-R] [was] trying to work with [Linder Oil] to see what, what we could come up with. Again, we had a hundred plus million dollars at risk.") Defendant also paid approximately $100,000 for the completion of an oil reserves report "[t]o try and get a good estimate as far as what the value of the oil and gas properties [were]" to attempt to procure a settlement of outstanding obligations. *Id*. at 133-35. Only after defendant had meetings where settlement options were explored, and conducted research regarding the oil reserves, which all failed to obtain substitute lending, did defendant FDIC-R repudiate the SLOCs. *See id*. at 75-76, 133, 179-181. No admissible material has been presented by plaintiff to refute defendant's pre-repudiation attempts to seek other financing and valuate bank assets and debts and related complexities in those acts. Additionally, while the impact upon these proceedings is unknown, there are other judicially noticed

complexities allegedly involving the subject Bank and some of its top officials.[9]

There is no material factual support of prejudice, e.g. compensatory damages, from the repudiation of the SLOCs or any assumed delay. Damages resulting from repudiation must be "actual direct compensatory damages . . . determined from the date of the appointment of the [FDIC-R]." 12 U.S.C. § 1821(e)(3)(A). In plaintiff's Proof of Claim, filed on December 1, 2017, plaintiff stated that "BOEM has not made any claims against the Bonds to the date hereof. But such claims are anticipated by Lexon." Rec. Doc. 1-11 at 7.[10] The record does not show admissible material evidence in support of that alleged anticipatory action. Thus, because no claims or admissible evidence of a threat of same have been made on the Bonds, there has been no "triggering event" to entitle plaintiff to actual direct compensatory damages, similar to *Credit*

---

[9] See as examples: *Academy Place, LLC, et al. v. First NBC Bank, et al.*, CA#18-10881 (EDLA 2019) (Rec. Doc. 24-1, p. 2," At all times during the alleged transactions up until the date on which the FDIC seized the assets of FNBC, Ryan held the position of President and CEO of the FNBC…The United States Attorney's Office for the Eastern District of Louisiana is conducting a pending, ongoing and active grand jury investigation of FNBC and the activities of Ryan while President and CEO of the bank. The federal grand jury is examining activities of the FNBC and Ryan…"); *USA v. Charity,* CR#19-90 (EDLA 2019) (Rec. Docs. 1 & 21); *USA v. St. Angelo*, CR#19-55 (EDLA 2019) (Rec. Docs. 1 & 28); *First NBC Bank's former top lawyer charged with defrauding New Orleans bank*, NOLA(March22,2019),https://www.nola.com/news/business/article_9e2ca8e8-5944-5dbe-9c4e-5c0946d89f57.html (stating that First NBC Bank's General Counsel "is accused of conspiring with two former top First NBC officials to defraud the bank: President and CEO. . . and former Chief Credit Officer…" and "…, though the charging documents make clear that the two are targets of the federal probe.").
[10] Plaintiff references its Proof of Claim in its Amended Complaint. *See* Rec. Doc. 43 at ¶ 55.

*Life Ins. Co.* and *Granite*. In *Credit Life Ins. Co.*, the court held "no damages [were] due as long as the triggering event . . . had not occurred prior to the date the bank [being] declared insolvent. *See Credit life Ins. Co.*, 870 F. Supp. at 425-26. Similarly, in *Granite*, the court held that because the "triggering-event" had not occurred prior to the date of the National Credit Union Administration Board's ("NCUA") appointment as conservator, that plaintiff had suffered no actual direct compensatory damages. *Granite*, 2018 WL 4677911, at *4. Plaintiff has suffered no actual damages regarding the SLOCs because no funds have been claimed by BOEM. The triggering event under the SLOCS—BOEM making a claim against the Bonds—never occurred and thus plaintiff has suffered no actual direct compensatory damages to date by the repudiation of the SLOCs, as required by 12 U.S.C. § 1821(e)(3)(A). Further, damages for which plaintiff alleges entitlement are merely "speculative," as no event triggering the right to receive funds under the Bonds has occurred.[11] *See* Rec. Doc. 34 at 6.

Defendant has shown there is no genuine issue of material fact as to whether the SLOCs were repudiated within a reasonable time or whether plaintiff has alleged compensable damages under §

---

[11] Even if Lexon had demanded payment from First NBC Bank before the repudiation, which would constitute a triggering event, the SLOCs appear to obligate Lexon to return any sums received, to the extent those funds exceed Lexon's losses under the bonds. *See* Rec. Doc. 43, Exhibit B, at ¶ 4 (stating "Your acceptance of this Credit will constitute your agreement to repay to us funds paid to you hereunder to the extent that such funds exceed the total of your loss, cost and expense (including unpaid premium(s) under the mentioned bonds(s), undertaking(s), agreements(s), or instruments(s)).").

15

1821(e)(3)(A). Defendant is entitled to a judgment as a matter of law.

**Breach of Contract Claim**

Defendant argues that the FDIC-R never approved the SLOCs in writing, as alleged by plaintiff in their amended complaint. *See* Rec. Doc. 55 at 15; *see also* Rec. Doc. 43 at ¶¶ 73-81. Specifically, defendant asserts that the FDIC-R could not have renewed the SLOCs because the renewal took place "if at all" before the FDIC-R was appointed receiver on April 28, 2017. *See* Rec. Doc. 55-1 at 15.

The roles of the FDIC-C and FDIC-R are distinct. *See Credit Life Ins. Co.*, 870 F. Supp. at 421 ("FDIC-Corporate and FDIC-Receiver are distinct entities.") In *Hartford Casualty Ins. Co. v. F.D.I.C.*, the 5th Circuit held "under the dual capacities doctrine, the FDIC-C may not be held liable for acts committed by the FDIC-R, i.e., the FDIC acting in one capacity is not subject to defenses or claims based on its acts in other capacities." *Hartford Cas. Ins. Co. v. F.D.I.C.*, 21 F.3d 696, 706 (5th Cir. 1994).

This motion deals specifically with defendant FDIC in its capacity as *receiver*, i.e. FDIC-R. Rec. Doc. 55 at 1. The SLOCs, by their terms, were set to expire on March 24, 2017, but would automatically renew for one year unless First NBC Bank gave sixty (60) days written notice of non-renewal, prior to the SLOCs expiration date. Rec. Doc. 43 at ¶¶ 14-15; Rec. Doc. 43, Exhibit B, Letter of Credit at 1 (stating "This Letter of Credit shall be

automatically renewed for additional periods of one year from the present or each future expiration date unless we have notified you in writing, not less than sixty (60) days before such date . . ."). Thus, the automatic renewal of the SLOCs took place when the FDIC-C failed to provide timely written notice of non-renewal to plaintiff Lexon by January 23, 2017. Rec. Doc. 43 at ¶¶ 14-15, 26. The deadline to provide timely notice of non-renewal fell on January 23, 2017, well before the FDIC-R was appointed receiver of First NBC Bank on April 28, 2017. *Id*. at ¶ 32. Therefore, Count three of the amended complaint is not a viable claim because the FDIC-R had not yet been appointed when the FDIC-C failed to provide written notice to plaintiff on or before January 23, 2017, resulting in automatic renewal of the SLOCs.

Plaintiff's amended claims remain conclusory and repetitive, failing to show material factual support for their contentions. Considering all admissible evidence from all parties, Defendant FDIC-R's construed motion for summary judgment (Rec. Doc. 55) adequately shows that there is no genuine issue of material fact. Accordingly, the amended claims against FDIC-R are dismissed.

New Orleans, Louisiana this 25th day of September, 2019

_[signature]_

**SENIOR UNITED STATES DISTRICT JUDGE**

17