UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEXON INSURANCE COMPANY, INC.,** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4245** |
| **FEDERAL DEPOSIT INSURANCE CORP., AS RECEIVER FOR FIRST NBC BANK** | **SECTION "B"(1)** |

## ORDER & REASONS

Before the Court are, defendant United States of America's ("FDIC-C") "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Rec. Doc. 70), plaintiff Lexon Insurance Company, Inc.'s ("Lexon") "Plaintiff's Memorandum in Opposition to Motion to Dismiss for Lack of Subject-Matter Jurisdiction" (Rec. Doc. 73), and defendant FDIC-C's "Reply Memorandum in Support of Motion to Dismiss for Lack of Subject-Matter Jurisdiction" (Rec. Doc. 78). Accordingly,

**IT IS ORDERED** that defendant FDIC-C's Motion to dismiss for lack of subject matter jurisdiction (Rec. Doc. 70) is **GRANTED.**

**FACTS AND PROCEDURAL HISTORY**

The facts giving rise to defendant FDIC-C's[1] current motion are further detailed in this Court's Order and Reasons regarding

---

[1] "The roles of the FDIC-C and FDIC-R are distinct. *See Credit Life Ins. Co. v. F.D.I.C.*, 870 F. Supp. 417, 421 (D. N.H. Oct. 18, 1993) ("FDIC-Corporate and FDIC-Receiver are distinct entities.") *In Hartford Casualty Ins. Co. v. F.D.I.C.*, the 5th Circuit held "under the dual capacities doctrine, the FDIC-

1

defendant's first motion to dismiss for failure to state a claim. *See* Rec. Doc. 34; *see also* Rec Doc. 21.

In March of 2016, plaintiff Lexon, as surety, executed eight Bonds ("the Bonds") on behalf of non-party Linder Oil that secured offshore mineral leases with the United States Department of Interior, Bureau of Ocean Energy Management ("BOEM"). Rec. Doc. 43 at ¶ 10. As a condition of executing the Bonds, Lexon required Linder to post collateral to secure Lexon's financial interest in the event that a claim was made under the Bonds. *Id*. at ¶ 11.  On March 24, 2016, First NBC Bank ("First NBC") issued two standby letters of credit ("SLOCs") relating to the Bonds issued by plaintiff Lexon. *Id*. at ¶ 11-12. The SLOCs, by their own terms, expired on March 24, 2017, but would automatically renew for a one-year period unless First NBC gave plaintiff Lexon 60-days written notice of nonrenewal. *Id*. at ¶ 14.

In late 2015, early 2016, prior to First NBC's closing and receivership, the FDIC-C and the Louisiana Office of Financial Institutions ("LOFI") began an examination of First NBC, which uncovered "First NBC's declining financial health." *Id*. at ¶ 16. On November 10, 2016, as a result of the examination, the FDIC,

---

C may not be held liable for acts committed by the FDIC-R, i.e., the FDIC acting in one capacity is not subject to defenses or claims based on its acts in other capacities." *Hartford Cas. Ins. Co. v. F.D.I.C.*, 21 F.3d 696, 706 (5th Cir. 1994). The current motion concerns actions allegedly taken by the FDIC in their Corporate, pre-receivership capacity.

LOFI, and First NBC entered into a Consent Order ("the Consent Order"). *Id*. at ¶ 18.[2]

As pertains to the instant issue before the court, the Consent Order states in pertinent part:

> (a) While this ORDER is in effect, the Bank [First NBC] shall not extend, directly or indirectly, any additional credit to or for the benefit of any borrower whose existing credit has been classified Loss by the FDIC or the State as the result of its examination of the Bank, either in whole or in part, and is uncollected, or to any borrower who is already obligated in any manner to the Bank on any extension of credit, including any portion thereof, that has been charged off the books of the Bank and remains uncollected.
>
> (b) While this ORDER is in effect, the Bank [First NBC] shall not extend, directly or indirectly, any additional credit to or for the benefit of any borrower whose extension of credit is classified Doubtful and/or Substandard by the FDIC or the State as the result of its examination of the Bank, either in whole or in part, and is uncollected, unless the Bank's Board has signed a detailed written statement giving reasons why failure to extend such credit would be detrimental to the best interests of the Bank.

*Id*. Exhibit C, Consent Order, at p. 8, ¶ 4(a),(b). During the effectiveness of the Consent Order, FDIC personnel were present on-site at First NBC "from early 2016 until First NBC's failure." *Id*. at ¶ 21. It is alleged in the complaint that the FDIC personnel "would have actively participated in such meetings and controlled, directly or indirectly, decisions about the day-to-day management and affairs of First NBC." *Id*.

---

[2] The Consent Order is attached in its entirety to plaintiff's amended complaint (Rec. Doc. 43) as exhibit C.

After the Consent Order came into effect, First NBC failed to send the required notice of nonrenewal regarding the SLOCs before 60-day deadline, resulting in an extension of the SLOCs through March of 2018. *Id*. at ¶ 26. Plaintiff Lexon alleges that renewal of the SLOCs "caused Lexon to lose its right to the collateral for the Bonds and its opportunity to mitigate any losses, costs, and expenses incurred under the Bonds." *Id*. at ¶ 28. Plaintiff asserts that once defendant FDIC entered into the Consent Order, "[1] the FDIC ha[d] a duty to mandate First NBC's observance and compliance with all of its terms and conditions, including a duty to prohibit First NBC from extending additional credit to Linder" and "negligently allowed First NBC to extend the term of the SLOCs." *Id*. at ¶ 25.

On April 25, 2018, Plaintiff filed a four-count complaint against defendant the FDIC-R, seeking "damages of $9,985,500.00 resulting from the FDIC's failure to honor, and improper repudiation of, [the] two [SLOCs] issued by [First NBC]." Rec. Doc. 1. Defendant moved to dismiss all claims for failure to state a claim on July 2, 2018. *See* Rec. Doc. 21 at 1.  That motion was subsequently granted by this court, in favor of defendant. *See* Rec. Doc. 34. An order was issued on September 7, 2018, dismissing Lexon's claim without prejudice to Lexon's right to bring an amended complaint within forty (40) days from the order. *Id*. at 6-7.

4

Thereafter, on January 18, 2019, Lexon filed an amended five-count complaint against the FDIC-C *and* FDIC-R, again seeking damages of $9,985,500.00. *See* Rec. Doc. 43. Defendant FDIC then filed a motion to dismiss under FRCP 12(b)(6), which was subsequently granted by this Court as to all claims against defendant FDIC-R. *See* Rec. Doc. 79.

The current matter pertains only to the single remaining cause of action asserted by plaintiff Lexon against defendant United States of America, based on *pre*-receivership oversight activity by the FDIC-C, pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff brings their claim against the United States as a defendant on behalf of the FDIC in their pre-receivership corporate capacity ("FDIC-C"). Defendant moves to dismiss plaintiff's claim against the FDIC-C arising under the FTCA, for lack of subject matter jurisdiction. Rec. Doc. 70 at 1.

**LAW AND ANALYSIS**

Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure govern dismissals for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir.1998). A motion to dismiss under Rule 12(b)(1) requires that the Court only examine whether it has jurisdiction to hear the case; it does

5

not call for intrusion into the merits of the claim. *Bell v. Hood*, 327 U.S. 678, 682 (1946). Once the court determines that there is a lack of subject matter jurisdiction, dismissal is appropriate.

    **A. Federal tort Claims Act ("FTCA")**

The United States is immune from suit except where expressly provided by Congress. Under the Federal Tort Claims Act ("FTCA"), suits against the United States are authorized "for injury or loss of property, or personal injury or death caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. *Johnson v. Sawyer*, 4 F.3d 369 (5th Cir. 1993) ("To recover under the FTCA, [plaintiff] must have been able to succeed against the [federal] government in a state law tort cause of action." (emphasis in original)). The FTCA also provides that the United States will be liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. *Id.* (citing *Artez v. United States*, 604 F.2d 417, 427 (5th Cir.1979)). "[L]aw of the place," as the phrase is used in 28 U.S.C. § 1346(b), "refers exclusively to state law." *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981).

    **B. Louisiana Civil Code Article 2315**

6

The place of the act or omission in this case is Louisiana and its law should apply. Plaintiff brings its claim pursuant to Louisiana Civil Code Article 2315 ("Article 2315"), which states in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE art. 2315. Article 2315 requires courts to undergo a "duty-risk analysis" to determine tort liability for general negligence. *Alford v. Anadarko E&P Onshore LLC*, No. 13-5457, 2015 WL 471596, at *11 (E.D. La. Feb. 4, 2015).

In Louisiana, under the duty-risk analysis, a plaintiff must show five elements:

> (1) *the defendant had a duty to conform his conduct to a specific standard of care* . . . ; (2) the defendant's conduct failed to conform to the appropriate standard of care . . . ; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries . . . .(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries . . . and (5) actual damages . . .

*Id.*

The threshold issue for determining liability in a negligence action is "whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Entergy Corp.*, 2006-477, p. 21 (La. 12/18/2006); 944 So. 2d 564, 579; *See also Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767 (E.D. La. Dec. 21, 2017) ("whether the defendant owed the plaintiff a duty is a threshold issue in any

negligence action."). The Eastern District has held, "[u]nder a duty-risk analysis, absent a defendant owing a duty to the plaintiff, there can be no actionable negligence and therefore no liability." *Alford*, No. 13-5457, 2015 WL 471596, at *11 (citing *Lemann v. Essen Lane Daquiries, Inc.*, 2005-1095, at p. 7 (La. 3/10/06); 923 So. 2d 627, 633).

Defendant contends this Court lacks subject matter jurisdiction over plaintiff's claim against them pursuant to the FTCA because there is "no tort duty that applies to an analogous private person acting as the FDIC-C in like circumstances under Louisiana Law." Rec. Doc. 70-2 at 4. Plaintiff counters that the FDIC-C owed a duty of care to plaintiff Lexon once it entered into the Consent Order and "took control" of First NBC, to exercise ordinary care in complying with the mandatory terms and conditions of the Consent Order to "prevent forseeable injury to stakeholders like Lexon. Rec. Doc. 73 at 6.

Initially, defendant notes a long-standing history of a "no-duty" rule in the federal precedent surrounding this issue. Courts in the Fifth Circuit, applying federal law, have regularly held that the FDIC, and similar federal banking regulators, owe no duty to a bank that is currently under their supervision, nor do they assume a duty by undertaking said banking institution's

8

supervision.³ However, the "no-duty rule" is mere lagniappe when determining the central issue in this matter; namely, whether the State law of Louisiana would impose a duty on the FDIC-C to uphold the terms of the Consent Order.

Louisiana recognizes no private tort duty that is analogous to the regulatory functions performed by the FDIC. Defendant contends that there is no analogous private tort duty that would be applicable to the FDIC-C because, "no private party provides the exact sort of banking oversight the FDIC-C performs." Rec. Doc. 70-2 at 7. Defendant further avers that "the Supreme Court has instructed lower courts to consider Good Samaritan liability that could arise if a private party did undertake an analogous function under state law." *Id.* (citing *United States v. Olson*, 546 U.S. 43, 45-47 (2005). Plaintiff counters that Louisiana "has adopted a broader and more flexible view of assumed duties of ordinary care than described in Section 324A [stating the test for Good Samaritan liability]" and "while 'Good Samaritan' liability is a species of assumed duty recognized under Louisiana

---

³ *Fed. Sav. & Loan Ins. Corp. v. Shelton,* 789 F. Supp. 1367, 1369 (M.D. La. 1992) ("It is clear that the FDIC owes no duty to manage a bank or to bring to the attention of its officers and directors any wrongdoing during its regulatory activities.")(emphasis added); *see also FSLIC v. Derbes*, No. 86-2764, 1986 WL 432, at *2, n.1 (E.D. La. Nov. 13, 1986)(citing *First State Bank of Hudson County v. United States*, 599 F.2d 558, 562-63 (3rd Cir. 1979); *Harmsen v. Smith*, 586 F.2d 156, 158 (9th Cir. 1978))(holding that a federal regulatory institution, similar to the FDIC "does not, by merely undertaking regulation and supervision of financial institutions, assume a duty to one who is injured by the unlawful practices of a regulated institution.").

law, it does not limit the general rule . . ." Rec. Doc. 73 at 9. This Court disagrees with plaintiff's contentions.

In *Olson*, the Supreme Court of the United States noted that the FTCA makes the United States liable "'in the same manner and to the same extent as a private individual under *like circumstances*.'" *Olson*, 546 U.S. at 46 (emphasis in original)(quoting 28 U.S.C. § 2674). The Supreme Court held that the term "like circumstances" does not constrict a court's analysis to the "*same circumstances*, but requires it to look further afield." *Id.* at 46. The decision then instructs lower courts to apply Good Samaritan analogies when deciphering the FTCA. *Id.* As an example, the Court opined: "Private individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon. *Id.* (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64-65 (1955).

Louisiana has adopted the standard for Good Samaritan liability from the Restatement (Second) of Torts § 324A (1965). *Bujol v. Entergy Servs., Inc.*, 2003-0492, pp. 14-15 (La. 5/25/04); 922 So. 2d 1113, 1128-29; *see also Hebert v. Rapides Par. Police Jury*, 2006-2001, pp. 9-10 (La. 4/11/07); 974 So. 2d 635, 643-44; Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical* harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care *increases the risk* of such harm, or (b) he has *undertaken to perform a duty owed by the other* to the third person, or (c) the harm is suffered because of *reliance* of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965)(emphasis added).

Defendant contends that plaintiff Lexon cannot establish liability under the Good Samaritan doctrine because: (1) Lexon's amended complaint does not allege physical harm; (2) Lexon does not allege that their risk was increased by executing the Consent Order; and (3) the terms of the Consent Order do not impose a duty on the FDIC-C to approve or deny additional credit. Rec. Doc. 70-2 at 7, 8, 9.

In opposition, plaintiff cites two cases that purportedly stand for the proposition that defendant FDIC-C assumed a duty to abide by the terms of the Consent Order to plaintiff Lexon by entering into the Consent Order. *Id*. at 8. This Court declines plaintiff's invitation to find that defendant FDIC-C assumed or owed a duty of care to plaintiff Lexon, the surety for a borrower of a banking institution under regulation by the FDIC-C.

First, Plaintiff cites *Holthaus v. Cameron Brown Co.*, where a plaintiff borrower sued a defendant lender for failing to

11

"lock-in" the interest rate on a loan after giving assurances that it would. *See Holthaus v. Cameron Brown Co.*, 491 So. 2d 443 (La. Ct. App. 1st. Cir. 1986). In *Holthaus*, Louisiana's First Circuit Court of Appeal held that the defendant had breached the duty owed to the plaintiff by failing to "lock-in" an interest rate for a loan at a 12.5% interest rate. *Id*. at 444. The court stated that although the defendant had no general duty to provide an interest rate of 12.5% to plaintiff, defendant's assurance that it would "lock-in" the interest rate caused defendant to "assume[] a duty . . . to plaintiff, to use due care to do so." *Id*. (citing W. PROSSER, HANDBOOK OF THE LAW OF TORTS, at 345 (4th ed. 1971).

*Holthaus* is factually distinct from the current case. Defendant FDIC-C and plaintiff Lexon, unlike the plaintiff and defendant in *Holthaus*, did not have a lending or business relationship. The lending relationship was between First NBC and Linder Oil Company ("Linder"), while Lexon was merely a surety for Linder, as agreed between those parties. The FDIC-C never had an agreement with plaintiff Lexon and therefore could not have assumed a duty, nor did it give assurances or promises to Lexon in any way. Further, the crux of the *Holthaus* decision was that plaintiff acted in reliance on the "locked-in" language presented by the defendant. The court held that "the risk that resulted was encompassed within the scope of protection of the

12

duty, for it was specifically to plaintiff that defendant extended the assurance, and it was reasonably foreseeable that plaintiff would rely on the strong, 'locked-in' language." *See Holthaus*, 491 So. 2d at 444 (citing *Sibley v. Gifford Hill and Co.*, Inc. 475 So. 2d 315, 319 (La. 1985). As stated above, there were no assurances made by the FDIC-C to Lexon, rather there was an agreement and lending relationship between First NBC and Linder, which Lexon was not privy to. Lexon merely acted as surety for Linder, who obtained SLOCs from First NBC to satisfy the collateral requirement for their separate suretyship agreement.

Plaintiff's second case, *Slaid v. Evergreen Indem., Ltd.*, is similarly misplaced. In *Slaid*, the purchaser of a mobile home brought an action in negligence against the bank that sold and inspected the mobile home for injuries sustained as the result of a Christmas tree fire. *Slaid v. Evergreen Indem., Ltd.*, 32,363 (La. Ct. App. 2d Cir. 1999); 745 So. 2d 793. The court noted that the bank had "no legal duty to inspect the home for inherent vices or defects prior to the sale, [but] once it undertook this task through [the bank's] inspection, it assumed a duty to perform the inspection in a non-negligent manner." *Id*. at p. 10; 799.

Defendant further notes that the court applied Good Samaritan liability to the facts of the case, without naming it

13

as such, when it cited the Second Restatement of Torts Section 324A. *Id*. at P. 7; 798. Further, *Slaid* analyzed the assumed duty with respect to *physical* injuries sustained as a result of the negligent inspection, namely the death and "disfiguring third degree burns" of two persons trapped within the mobile home resulting from a Christmas tree fire. Id. at p. 2; 795. The case does not stand for the proposition that a regulatory body, such as the FDIC-C, is in any way liable to a third-party surety, for potential *economic* losses resulting from the renewal of a standard letter of credit in defiance of a Consent Order.

Plaintiff has failed to show that defendant FDIC-C owes a duty of care to plaintiff Lexon, and further fails to offer support that there is an analogous tort duty applicable to the FDIC-C under Good Samaritan liability, as instructed by the Supreme Court of the United States. As it is clear that plaintiff has failed to show that this Court has subject matter jurisdiction over this state court claim, pursuant to the FTCA, this court finds no need to delve further into the merits of this matter and discuss the discretionary function exception to the FTCA.

New Orleans, Louisiana this 28th day of February, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE